# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

EASTERN DISTRICT, DECEMBER TERM, 1848.

PHILADELPHIA.

---

## THOMAS *v.* PHILLIPS. (*a*)

The right to avoid an assignment voidable by creditors, for fraud or for non-compliance with the registry act, vests in the insolvent trustees of the assignors, to the exclusion of prior judgment-creditors, whose executions issued subsequently to the date of the assignment to such trustees.

And this, though no acts in avoidance of such assignments were done by the trustees: and where it was shown they had, as individual creditors, ratified them by accepting dividends, and had declared they were advised they had no right, as trustees, to the assigned property, and had not called upon the voluntary assignees for an account.

Where an insolvent was discharged, under the act of 1836, without having executed the assignment, as required by the act, and the court subsequently allowed such an assignment to be executed, and the trustees' names inserted, it was held, that such trustees had the exclusive right to avoid fraudulent assignments, made by the insolvent as against a creditor levying execution subsequently to the perfection of the insolvent assignments.

IN error from the District Court of Philadelphia.

*March* 9–13. The questions in this case were: 1. Whether the assignments of R. and I. Phillips, hereinafter referred to, were voidable by creditors? 2. Whether the plaintiff below, under his attachment execution, was entitled to avoid it, or whether the right so to do was exclusively vested in the insolvent trustees of the assignors.

---

(*a*) This case was argued in December Term, 1847.

The first assignment, made on the 22d March, 1837, was a partial one, and will be seen stated in Weber v. Samuel, *ante*, vol. 7, p. 500, where it was held to be voidable for want of a registry, in conformity to the act of 1818.

The second assignment was made June 22, 1837, and will be found *ante*, vol. 7, p. 501; where it was held to be voidable because, stipulating for a release, it did not purport to convey the separate property of the assignors.

On the trial of the case, before STROUD, J., the plaintiff showed an attachment execution, issued to March Term, 1841, on a judgment previously recovered against R. and I. Phillips, which had been served on the assignees under the above-mentioned assignments as garnishees. He also read their answers to his interrogatories, admitting the receipt of funds under those assignments.

The defendants gave in evidence the record of the discharge in insolvency of the assignors above-mentioned. By this it appeared, that the orders of discharge were made upon the common petition and affidavit, in October, 1837, each order reciting that an assignment had been made to ——, in trust for his creditors. But it also appeared, from the record, that these assignments were not signed by the assignors, nor were the names of the trustees inserted until September, 1838, when they were perfected in these particulars, under an order of the court. The plaintiff also showed that ineffectual attempts had been made by certain creditors from 1838 to 1842, to procure the removal of the insolvent trustees, on account of their alleged interest to sustain the prior voluntary assignments.

The plaintiff further read the depositions of the insolvent trustees, taken before a commissioner in bankruptcy. One of them stated he had, as a creditor of R. and I. Phillips, executed a release and received a dividend, under the June assignment. That he had received no funds as trustee in insolvency, nor as such trustee received or settled any account with the voluntary assignees. That he had always been ready to perform his duties as trustee; had an intimation of some estate belonging to R. and I. Phillips, but did not recollect what it was; he was advised by his counsel he had nothing to do with it—the property belonged to the assignees, and the assignment, he understood, had been confirmed in the Supreme Court.

The other trustee stated he had not called on the assignees for their accounts; he had been advised his duties would commence

where theirs ended. He also was a releasing creditor, under the June assignment.

There was no evidence of any action taken by the insolvent trustees, adverse to the voluntary assignments.

The court directed a verdict for defendants.

The admission of the insolvent proceedings in evidence, and the charge, were the errors assigned.

*Guillou* and *C. Fallon,* for plaintiff in error, argued that the assignment of June was voidable, because it did not purport to convey separate assets of the partners, and yet required a release which would discharge such assets from liability to the partnership creditors. The argument, as to the March assignment, is stated in the report of Weber *v.* Samuel, 7 Barr, 500.

On the right of the insolvent trustee, they contended, that there being no execution of those assignments until one year after the discharge, they were unavailing, nor could the order of the court give them a retro-active effect. By the act of 1814, a signing was unnecessary, since the discharge, without more, vested the property in the trustees. This has been altered by the act of 1836, which cautiously requires three distinct things—the oath, the execution of the assignment, and the discharge.

That the discharge having been granted without an execution of the assignment, the whole proceeding became *coram non judice.* [BELL, J.—You do not deny, that if the court had jurisdiction, the property passed.] If it had, then a right of election did pass; for the act also distinguishes the rights of the trustee. The 34th section vests all the insolvent's estate; section 35th provides for *bonâ fide* transfers, without notice, *prior to the date of the assignment;* section 36th gives the right *to avoid* fraudulent transfers also, *prior to the date of the assignment;* thus drawing a distinction between the two species of rights. The title to the property fraudulently conveyed is not vested absolutely, but a mere election to avoid the transfers is given. This is to be exercised or not, as may be deemed beneficial to the creditors: 1 Miles, 224; 2 Whart. 245. It is similar, in all respects, to the right in each creditor proceeding to execution: 9 W. & S. 156; 4 Barr, 430; per Baldwin, J., in 2 How. 666. The same construction was given to the domestic attachment law, in 4 Rawle, 345; 6 L. Rep. 315–17; 7 T. Rep. 387–92.

In this case, there is no evidence that the trustee has proceeded to exercise that right and avoid the assignments.

*C. Ingersoll* and *F. W. Hubbell*, contrà, argued that no case had yet decided that an assignment of partnership assets alone, would be void where the stipulation was for a release of partnership debts.

That by the deed of June, all the property did pass, which might be assumed since there was no evidence of any separate assets. The words *all their estate* are sufficient to pass the private estate, as was held in 2 S. & R. 178; it would be sufficient in the case of a will to prevent an intestacy, and the same effect as to words of description is given in the one case as in the other. Beside, the private estates are in effect partnership assets, being liable equally with other property to the general creditors.

That the stipulation was a condition subsequent, and hence, if illegal, was void, but the deed stood: Co. Litt. 203 a. [GIBSON, C. J.—It is a limitation to such persons as shall perform the condition.]

As to the insolvent assignee : It does not appear he has not acted, but that is immaterial, he has given security to his *cestuis que trust :* 4 S. & R. 117. It would be a novelty that his negligence would entitle one *cestui que trust* to take advantage of that and exclude the others. This matter was settled in Englebert *v.* Blanjot, where he is expressly declared to have the same rights as an execution-creditor ; that has not in any respect been shaken on this point which alone is the decision, by any subsequent case. It was to avoid the difficulty suggested in that case, as reported in 1 Miles, that the act of 1836 was drawn up in as strong language as possible.

*Dec.* 26. COULTER, J.—The fifth error assigned, as to the admission of evidence, is of no moment, and cannot be sustained. The evidence was pertinent, and relative to the issue, and established the very fact on which the case turns.

The other errors assigned to the charge of the court are of the same import. But the court below were right, the only question presented by the case was a question of law, and the court rightfully so instructed the jury.

The plaintiff below was not entitled to recover. Before the institution of the proceeding in attachment, in this case, Phillips & Moss had taken the benefit of the insolvent laws, and transferred their property to trustees for the benefit of their creditors, who had given bond, &c., in pursuance of the statute.

No individual creditor could proceed in this way after such transfer; if he could, the beneficial objects and intent of the law

might be defeated and evaded. It belonged exclusively to the trustees in insolvency to contest any alleged fraudulent transfer of property previously made for the benefit of particular or preferred creditors, because the property in such case would vest in them for the purposes of their trust, a fair and just distribution among all the creditors according to law. See the case of Weber *v.* Samuel, 7 Barr, 500.

The judgment is affirmed.(*a*)

---

(*a*) ROGERS, J., was at Nisi Prius during the argument.